■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROLANDO OQUENDO, Appellant. [633 NYS2d 492] —Judgment of the Supreme Court, New York County (Alfred Kleiman, J., at suppression hearing; Charles Tejada, J., at nonjury trial) rendered September 28, 1993, convicting defendant of criminal possession of stolen property in the fourth degree, and sentencing him, as a second felony offender, to a term of $1^1/2$ to 3 years, reversed, on the law and the facts, the motion to suppress evidence granted, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Regardless of whether this police-citizen encounter is characterized as an arrest or a stop and frisk, it exceeded the scope of what was constitutionally permissible under the particular circumstances. The objective information available to the officer, who merely saw defendant walking in an area in the Port Authority Bus Terminal that just minutes earlier had been completely open to the public, only provided "a founded suspicion that criminal activity [was] afoot" (*People v De Bour*, 40 NY2d 210, 223), thereby activating the officer's common-law right to inquire. Neither the fact that this Spanish-speaking defendant failed to immediately respond to the officer's question (*People v Gutierrez*, 129 AD2d 463, 465, *appeal dismissed* 70 NY2d 782) nor the fact that the arresting officer subjectively

believed that defendant "looked like he was going to run on [him]" in response to the officer's direction to stop (an erroneous belief as it turned out) was a sufficient basis to escalate this into a more intrusive encounter. Furthermore, a careful review of the testimony reveals that the officer saw the bulge that turned out to be a knife *after* defendant was arrested. "In evaluating the police action we must consider whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" (*People v De Bour, supra,* at 222) and subsequent developments cannot serve as the foundation for either a finding of probable cause to arrest or reasonable suspicion to conduct a stop and frisk.

In light of the foregoing, we do not reach appellant's remaining contentions. Concur—Ellerin, J. P., Wallach, Asch and Mazzarelli, JJ.

Ross, J., dissents in a memorandum, as follows: As properly noted by the majority, the overriding consideration in any evaluation of a civilian police encounter is "whether or not the police action was justified in its inception and * * * whether or not that [police] action was reasonably related in scope to the circumstances which rendered its initiation permissible" (*People v De Bour,* 40 NY2d 210, 215). However, in my view, evaluation of the matter at bar in terms of that standard should yield a different result.

According to the testimony elicited at the suppression hearing, the arresting officer observed the defendant at 1:15 A.M., walking through an area of the Port Authority Bus Terminal that had been closed approximately one quarter hour earlier. Given the location, the time of morning and the fact that the defendant appeared startled at being confronted by the officer, it was reasonable for the officer to approach the defendant and then take him into custody upon failing to receive an explanation for defendant's unlawful presence in the restricted location.